ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6511
    FAX: (415) 436-7234
    matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. 3:24-mj-70635-MAG |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **UNITED STATES' MEMORANDUM SUPPORTING MOTION FOR DETENTION** |
| v. | ) | |
| | ) | Date: Tuesday, April 30, 2024 |
| NATHANIAL ALFONSO BURKE, | ) | Time: 10:30 a.m. |
| | ) | Court: Hon. Sallie Kim |
| Defendant. | ) | |

## I. INTRODUCTION

The facts cannot be put delicately. Defendant Nathanial Alfonso Burke's words and deeds show he wants to rape girls as young as 11 years old. On April 25, 2024, Burke took a day off work, put condoms in his pocket, and drove for over an hour and a half to a hotel in Rohnert Park to have sex with the 11-year-old "Maisy." Just days before, Burke had told Maisy precisely what he wanted to do to her. He sent her and her "father" images depicting the oral and vaginal rape of prepubescent girls. And as early as January 2021, Burke had distributed other images and videos too, which similarly showed the rape of girls as young as seven.

All the while, Burke knew his victim was 11 years old and that his actions were illegal. But as he explained, "I know that once we are all together and talking[,] I will not have a problem lol[.] she's just

stupid cute[.] *I keep looking for girls her age*." (Emphasis added.) Or—as he explained while fantasizing about his teenage niece and sharing a photo of her—"there bodies are just blooming and there sexy as hell[.] it started because I love incest[,] and I feel like once you go down the rabbit hole[,] you kinda go by young." Prepubescence especially attracted him. "Maybe when she's just a bit older we can start stretching her out a bit getting her ready . . . honestly I wouldn't mind trying my dick out on here [sic]," Burke wrote about Maisy. Burke spared no details, down to his ejaculating on "ether [sic] her face or body . . . Maybe both."

Thankfully, "Maisy" and her "father" were undercover FBI employees who had found Burke's disturbing online posts, which solicited incest with "real parents" in the Mendocino area. If Burke were released, though, there is no guarantee the community would remain safe a second time. Burke will have relatively easy access to children if he is released. He is a bus driver for the Mendocino Transit Authority, whose riders include many children. His release would also endanger and distress Burke's teenage niece and any other minor relatives, given that Burke fanaticized about her and sent her photo to many apparent strangers on an encrypted messaging application.

What's more, Burke poses a risk of flight. He has traveled recently to Mexico twice and enjoys it there. And he has every incentive to flee there or elsewhere. He faces a mountain of evidence (including a *Mirandized* confession), at least five years' imprisonment, a Guidelines range of about 210 to 262 months, and 25 years on the national sex offender registry, among other penalties.

All told, Burke cannot rebut the statutory presumption that is a danger to the community and a risk of flight. The Court should order him detained pending any trial on his child exploitation offenses.

## II.     BACKGROUND

Described below are Defendant Burke's (A) history of child pornography distribution and interest in incest as early as January 2021; (B) his latest distribution of child sexual abuse material (CSAM or "child pornography") and attempt to entice/rape an 11-year-old girl; and (C) his distribution of CSAM to the 11-year-old, his arrival at a hotel with condoms, and his post-arrest statements.

### A.     Defendant's History of Child Pornography Distribution and Interest in Incest

Burke distributed CSAM even before committing the charged offenses. In January 2021, Kik Messenger reported the account belonging to Nathan_Burke@yahoo.com to the National Center for

Missing & Exploited Children (NCMEC). On Kik, Burke had distributed at least 17 CSAM files—including videos depicting the rape of girls as young as 7 years old—from IP addresses linked to the San Francisco Bay Area. These videos showed, for example:

- A female minor (about 7–10 years old) orally copulating a male's penis. At the end of the video, the female minor is seen undressing and the video ends with recording device focused on her exposed buttocks.

- A female minor (about 14–16 years old) being vaginally penetrated by a male penis. The female minor is fully nude. The female minor is laying down on her back in the back seating row inside a vehicle while being penetrated. No pubic hair was observed.

- A female minor (about 10–12 years old) standing fully nude in front of a recording device. The female minor walks up and exposes her vagina; lowers herself to the ground so the focal point is on her chest and rubs her nipples; and stands up and turns around and exposes her anus to the recording device. An unknown female minor walks into the room and quickly leaves. The female minor who was fully nude quickly begins to dress herself. No pubic hair was observed.

Then, as early as January 2022, Burke began soliciting "real parents" to gratify his interest in minors and incest. He posted on an online forum under the username "Nathan666"—an account registered under his actual birthdate, physical location, and occupation. On January 17, 2022, for example, Burke posted "I would love to talk to real parents who enjoy there [sic] families and hear your story and how you got started" on a thread titled "Real Parent?" On September 2, 2022, Burke wrote "Anyone want to talk let's talk some incest here's my number" and listed his actual cell phone number. And on February 25, 2024, Burke posted, "Mendecino here willits [sic] to be exact always down to talk to local new friends."

### B. Burke's Distributes CSAM and Tries to Entice/Rape an 11-Year-Old Girl

Burke eagerly took the opportunity to distribute more CSAM and to rape an 11-year-old girl. Specifically, from February 22, 2024 through his arrest on April 25, 2024, Burke messaged—and then took off work and drove over an hour to meet—individuals he thought were a divorced father and his 11-year-old daughter. In truth, these individuals were undercover employees of the Federal Bureau of Investigation.

Burke's scheme to entice a minor began on February 22 when an FBI online covert employee (OCE) messaged Burke, "[d]ivorced dad from the Bay Area so not too far from you. Also looking to talk with people with experiences or fam of interests. Let me know if you want to chat." Burke accepted the

1  OCE's message request and quickly turned his focus to actual minors, not idle fantasy. Burke wrote,
2  "you said you are a divorced dad how old is your kid and have you ever had thoughts of them?" Upon
3  learning that "the kid" was 11, Burke replied: "Ohhh amazing age she's just starting to grow into her
4  body very hot [Red Face with sweat emoticon] you're a lucky dad."
5  	Soon thereafter, Burke was "getting ahead of [him]self," in his own words. Within hours of the
6  OCE's first message, Burke was already proposing sexual contact with the OCE's 11-year-old daughter.
7  Burke wrote, for example:

> Burke: Man I can't lie I'd be **soo hot to watch and play with you guy like damn I know I'm getting ahead of myself** but I just had to say it outloud lol [Laughing Face with tears emoticon]
>
> OCE:   I feel the same way. Hard for me not to get that mental image out of my head
>
> Burke: What part turns you on the most for me it's just knowing she's your daughter and how she probably loves playing with dad damn I'm hard
>
> Burke: **Want to see what your daughter can play with? Definitely ok to say no**
>
> OCE:   I'm turned on about the idea of sharing her and watching her
>
> OCE:   Yeah I'd love to see what she could maybe have at some point!
>
> Burke: [Photo submitted. The photo depicts an adult male penis with a hand around the shaft. The male body is laying on a bed and has pants pulled down.]
>
> Burke: Think she would like this **god the thought of her naked body licking my cock**

(Emphasis added.)

	Meanwhile, there was no question of Burke's identity. Burke sent a photo of himself to the OCE, which is easily comparable to his California DMV photo. And later, Burke sent photos of tattoos on his arms that match tattoos posted on his Facebook profile.

	Just a day after meeting the OCE, Burke shared a photo of his teenage niece and his sexual interest in her. Burke wrote, "my favorite age is 13 to 16 and honestly because there just soo damn hot there bodies are just blooming and there sexy as hell it started because I love incest and I feel like once you go down the rabbit hole you kinda go by young." Burke elaborated, "there's just something about

that sweet spot age[.] I think my cousin and niece really helped too although I've always been content with just the fantasy of it like I said before I'd love a open family and that means nudity being common for everyone."[1]

On February 23, Burke gave the online covert employee his phone number so that the OCE could add him on WhatsApp. And with the start of their WhatsApp conversation, Burke began sending CSAM depicting the rape of prepubescent girls, including a girl as young as 7 to 9 years old. Burke distributed, for example:

- CSAM photo depicting a minor female approximately 7–9 years old who is on her hands and knees about to be penetrated by an adult male's penis. The male is fully nude and both appear to be on a couch.

- CSAM photo of an adult male (face is cut off from picture) about to penetrate a nude minor female approximately 11–13 years old who is on her hands and knees on a bed. Below the female minor is another female nude minor approximately 8–10 years old who is spreading the buttocks of the female open.

- CSAM photo of a female minor approximately 7–9 years old orally copulating an adult male penis. Another female minor approximately 15–17 years old lays underneath the female minor orally copulating the adult male with her tongue pressed against the first female minor's genitalia.

By February 25, Burke proposed sex with the OCE's 11-year-old daughter, "Maisy." Burke stated he would want Maisy "completely naked," "taste her possibly 69," and then "pop wherever she wants . . . her chest or her face." He included with this proposal CSAM photos and videos, including photos of nude girls between eight to 16 years old. And Burke stated he was serious. "[J]ust know I'm very real and definitely want this to happen," he wrote. Furthermore:

- Burke noted that if he didn't have a roommate, the OCE and his daughter Maisy could stay with him for a weekend.

- Burke asked the OCE how to ensure the 11-year-old would know the sexual purpose of their meeting. He stated, "does she know that I want to play with her naked too?" Nathan further stated, "when she's older and we can fuck her it's ganna be crazy amazing like can you picture it".

- Burke sent CSAM of a nude girl on her hands and knees. Burke asked the OCE, "ever see that view with Maisy," and "I can't wait to see her naked".

- When the OCE mentioned Burke wearing condoms, Burke responded, "absolutely I'm all

---

[1] After law enforcement seized Burke's phone pursuant to a search warrant, FBI investigators found that Burke had sent this same photo of his teenage niece to many apparent strangers via Session, an end-to-end encrypted messaging application.

about safe sex."

Starting on February 27, Burke sexually propositioned "Maisy" directly on Google Chat. (Burke's Google profile included the username "Nathan Burke" and email address nathan.burke6662@gmail.com, with 6662 matching the last four digits of his Snapchat handle.) Burke wrote to Maisy, for example, that "once your a little older maybe in like 2 or 3 years it won't hurt anymore" and "it really feels good when you get your pussy licked too." And after Maisy provided Burke with a picture of herself (a digitally altered image of a clothed adult), Burke replied, "just so you know you made me happy with that pic it made me kind hard looking at your beautiful pic." Burke then sent Maisy a picture of an erect penis before deleting it soon after. Burke stated, "honestly I really want to show you how I eat pussy," and "I want to lick your pussy while you play with me."

This all culminated in Burke's plan to meet the 11-year-old Maisy and her father at a hotel in Rohnert Park on April 25. Before that day and his arrest, Burke explained that he would take the day off work so that he would "have all day to play" when Maisy "doesn't have school[.]"

And Burke knew what he was doing was illegal and that he could stop anytime. On April 15, for example, Burke asked, "Do you ever feel a little guilty about everything that's kinda what's making me nervous is I always thought it would be fantasy for me and now it can happen," The OCE responded, "I don't want you to feel pressure or anything if you don't want it too." To this, Burke replied, "Ok yeah true very true and I'm not asking because I don't want to I'm just talking it out kinda like getting the gitters out of my system lol." Burke further advised, "I think it's super hot . . . I will feel better when I meet you guys in person I know that my dick will take over from there lol." When the OCE asked what Burke was nervous about, Burke responded, "honestly it's her age and what we want to do it's scary to me because *well it's illegal lol* and I also want us all to click." (Emphasis added.)

By April 17, Burke had proposed a hotel location that would prevent his girlfriend from accidentally seeing him or his vehicle on April 25. And Burke wrote, "[Maisy's] age was making me nervous but I know that once we are all together and talking I will not have a problem lol she's just stupid cute *I keep looking for girls her age*." (Emphasis added.)

**C.    Burke Sends CSAM to the 11-Year-Old and Arrives at a Hotel with Condoms**

By April 22, Burke was sending CSAM to the 11-year-old "Maisy" to explain how he wanted to

rape her. In an April 22 Google Chat with Maisy and her "father," Burke wrote, "I have a picture that I want you to see because it's kinda something we can try all together." Burke then sent CSAM of a nude minor female performing oral sex on an adult penis. The minor female is sitting on top of another nude female who is performing oral sex on the minor female. And when asked if that was what he wanted to do to Maisy, Burke replied, "Yes I do."

While messaging the April 22 Google group chat, Burke was also directly messaging the "father" what he wanted to do to Maisy. Burke wrote, "I want to say eventually I want us to be like this." Burke then sent CSAM of a prepubescent girl wearing only a white tank top being vaginally penetrated by an adult penis. Moments thereafter, Google terminated the chat group and banned Burke's account. Burke's reaction was nonchalant: "I got kicked from the chat I think I probably shouldn't have sent those on the app," but "I don't think I will get in trouble because I can play dumb." And when the online covert employee asked Burke if was going to send any other pictures to Maisy, Nathan sent CSAM of a prepubescent girl wearing only an animal print headband on her hands and knees being penetrated from behind by an adult male penis.

Finally, as planned, Burke drove to meet Maisy at a hotel on April 25. He started the day by messaging the OCE that he was "even more excited for today." As planned, Burke had taken off work. He drove almost two hours to a pre-arranged hotel in Rohnert Park. Burke had requested a hotel in Rohnert Park (rather than a relatively closer hotel in Windsor) to avoid possibly running into his girlfriend, who lives near Windsor. As planned, Burke parked in the hotel lot. And Burke walked all the way up to the second floor of the hotel to look for the agreed-upon room. Burke nervously messaged the OCE, "I think my brain won't let me just walk to a hotel room without meeting the person[.] *I've watched to much cops lol* [crying face emoji]." (Emphasis added.)

Law enforcement arrested Burke at the hotel. In his pocket, investigators found the condoms he planned to wear for sex with Maisy. On his phone, investigators found the encrypted messaging applications he had used to message the OCE, as well as Burke's messages with other individuals. And after *Miranda* warnings, Burke largely confessed his misconduct. His interview was recorded.

### III.  LEGAL STANDARD

The Court shall detain a defendant before trial where "no condition or combination of conditions

will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk—the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

The Bail Reform Act mandates a rebuttable presumption of detention if there is probable cause to believe that the defendant has committed certain offenses. *See* 18 U.S.C. § 3142(e)(2)–(3). These offenses include, among others, "an offense involving a minor victim under" 18 U.S.C. § 2252(a)(2) (distribution of child pornography) and § 2422 (enticement of a minor). *Id.* § 3142(e)(3). "If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four factors in determining whether the pretrial detention standard is met." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Those factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). That said, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case *as an evidentiary finding militating against release*, to be weighed along with other

evidence relevant to factors listed in § 3142(g).'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (emphasis added) (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

What's more, the rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). At a detention hearing, the government may proffer evidence sufficient to inform the court of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

## IV.   ARGUMENT

Burke cannot rebut the statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3), (e)(3)(E); *see Hir*, 517 F.3d at 1086 (explaining that the presumption is "an evidentiary finding militating against release" even when defendant proffers evidence to rebut it). Burke is a danger to the community who also poses a flight risk.

### A.   Releasing Burke Would Endanger the Community.

Burke sought to rape an 11-year-old girl. On April 25, he took a day off work, bought condoms, and drove for over an hour and a half to a hotel in Rohnert Park to meet "Maisy"—a girl to whom he had sent CSAM and photos of his erect penis just days before. Burke did all this even though he knew it was illegal, and even though the online covert employee (OCE) wrote to him, "I don't want you to feel pressure or anything if you don't want it too."

Burke's targeting of Maisy fits a pattern. "I keep looking for girls her age," as Burke wrote recently. And as early as January 2021, Burke distributed CSAM on Kik that depicted the oral and vaginal rape of girls as young as 7–10 years old and 14–16 years old. Between then and now, he sent many strangers a photo of his teenage niece. Burke shared with the OCE, for example, that "[his] cousin and niece really helped" spur his interest in "that sweet spot age" where "there [sic] just soo damn hot there bodies are just blooming." And his pedophilia has only worsened. Burke wrote, "it started because I love incest and I feel like once you go down the rabbit hole you kinda go by young." He "thought about [] a lot" how he would groom even his own children for sexual abuse. "I would slowly introduce them to playing around 7 or 8 to help me with mom or vise versa," Burke wrote, "and obviously having them suck and finger around 10 or so[.] I've thought about it a lot to be honest."

Burke will also have relatively easy access to children if he is released. He is a bus driver for the Mendocino Transit Authority (MTA), which provides public transportation for Mendocino County. About 15 percent of MTA riders are youths under 19 years old. *See* Mendocino Transit Authority, *Mendocino Countywide Transit Ridership Survey: Final Report* at 20–21 (2015). Many are as young as 6 to 18 years old. *See* Mendocino Transit Authority, *2011–2015 Short Range Transit Development Plan* at 13, 77 (Nov. 2011) (describing MTA's partnerships with the Boys and Girls Club and a non-profit in Willits). Burke has expressed and acted upon his sexual attraction to essentially this entire age range.

And even if Burke had never sought to rape an 11-year-old, his distribution and possession of child pornography alone "weighs heavily against release." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *7 (D.D.C. May 8, 2019) (Howell, C.J., reversing release of defendant). That is because "the distribution and possession of child pornography constitutes a danger to the community, resulting in physical and mental harm to the children depicted, normalizing such conduct among those sharing this contraband, and creating a market for such contraband, and thereby encouraging the victimization of more children. These significant harms and dangers animated the Congress to create the statutory presumption of detention in these cases." *Id.*; *accord United States v. Kearney*, 672 F.3d 81, 94 (1st Cir. 2012) (quoting statutory findings). In other words, "[t]he child pornographer simply cannot be analogized to the garden-variety drug user convicted under 21 U.S.C. § 844(a) of possessing a controlled substance, who is, practically speaking, his own victim. The child pornographer victimizes not *himself*, but *children*." *United States v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997) (emphasis in original) (condemning the distribution of CSAM); *see also, e.g.*, *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008) ("[M]erely possessing child pornography is not a victimless crime; it fuels the demand for the creation and distribution of child pornography."); *United States v. Blinkinsop*, 606 F.3d 1110, 1117–18 (9th Cir. 2010) (explaining how the distribution of CSAM exacerbates "ongoing harm" to depicted victims).

**B.    Releasing Burke Would Fail to Reasonably Assure His Appearance.**

No condition or combination of conditions would reasonably assure Burke's appearance at proceedings pending trial. Three independent reasons show why.

First, Burke poses a serious risk of flight, particularly to Mexico. As he has stated to the OCE,

Burke has traveled more than once to Mexico and enjoys it there. Law enforcement's database checks confirm that Burke has traveled to Mexico in both 2021 and 2023.

Second, the charged offenses are gravely serious. CSAM distribution alone carries 5 years of mandatory minimum imprisonment and 25 years on the national sex offender registry as a tier II sex offender. *See* 18 U.S.C. § 2252(b)(1) (mandatory minimum); 34 U.S.C. §§ 20911 (defining sex offender tiers), 20915 (registration period). And Burke's Sentencing Guidelines range is approximately 210 to 262 months, even after acceptance of responsibility, because his specific offense characteristics are remarkably serious. Among other things, Burke distributed (1) material involving prepubescent minors; (2) to a minor with the intent to entice the minor to engage in prohibited sexual conduct; (3) material portraying sadistic or masochistic conduct or other depictions of violence;[2] and (4) at least 150 images. *See* U.S.S.G. §2G2.2(b)(2), (3)(E), (4).

And third, the strength of the evidence makes it likely Burke will face these serious penalties—a likelihood that makes it in his interest to flee. *See* 18 U.S.C. § 3142(g)(2); *see, e.g.*, *United States v. Cuong Cau Dang*, No. 13-CR-486-EJD (PSG), 2013 WL 4119426, at *3 (N.D. Cal. Aug. 9, 2013) ("It is fair to conclude that [defendant] might have a heightened motivation to flee if the government's evidence is relatively strong."); *United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023) (citing weight of evidence to affirm detention order), *cert. denied*, No. 23-6716, 2024 WL 899487 (U.S. Mar. 4, 2024). Before his arrest, Burke spent nearly two months distributing CSAM to an FBI online covert employee and confirming his identity by, for example, sending photos of his face and tattoos. Burke was then arrested at a hotel, with condoms in his pocket, after describing in graphic words and CSAM how he wanted to rape an 11-year-old girl. And after his arrest, Burke largely admitted guilt in a recorded and *Mirandized* interview.

C.   **The Defense's Proposed Release Conditions Are Inadequate.**

Burke's counsel will likely point to Burke's lack of criminal history, his family ties to the Bay Area, and the fact that Burke sought to entice an undercover FBI employee rather than a real minor. But

---

[2] The Ninth Circuit has "joined multiple circuits in holding that images involving an adult male penetrating prepubescent children are sadistic or masochistic because the conduct depicted 'necessarily hurt the child.'" *United States v. Shouse*, 755 F.3d 1104, 1107 (9th Cir. 2014) (quoting *United States v. Rearden*, 349 F.3d 608, 614–16 (9th Cir. 2003)).

this all fails to rebut the presumption of detention, as courts across the country have found. *See, e.g.*, *United States v. Campas*, No. 24-4024, 2024 WL 1526286, at *2 (10th Cir. Apr. 9, 2024) (per curiam) (detaining defendant who tried to entice an undercover FBI agent even though the defendant had no valid passport and no convictions); *United States v. Pieper*, No. 23-50910, 2024 WL 229266, at *1 (5th Cir. Jan. 22, 2024) (per curiam) (detaining defendant despite "lack of criminal history, United States citizenship, and family ties"); *United States v. Furlow*, No. 20-CR-30050, 2020 WL 6286228, at *5 (C.D. Ill. Oct. 27, 2020) (detaining defendant who messaged undercover agent despite defendant's "remote" and limited criminal history). Time and again, courts have detained similarly situated defendants given their risk of flight and danger to the community.

Burke's counsel has also proposed his mother as a custodian. But courts have found custodians generally inadequate in cases such as Burke's. In *United States v. Super*, for example, the court ordered the defendant detained even though "[defendant]'s parents would make a good faith effort to dutifully serve as third-party custodians." No. 3:23-CR-05233-BHS, 2023 WL 5952715, at *4 (W.D. Wash. Sept. 13, 2023). The *Super* court reasoned, among other things, that custodianship was "likely not sufficient to keep [defendant] offline and unable to access websites where he could solicit or consume child pornography." *Id*. Analogously, in *United States v. Breeden*, the defendant "point[ed] to the lack of any prior criminal history, the lack of evidence beyond his own statements that he ha[d] ever been involved in similar conduct before, his willingness to be cut off from the internet and access to a computer entirely, his parents' willingness to serve as custodians, the shame that he and his family have already suffered as a result of his arrest and incarceration, and the fact that Pretrial Services would be notified if he left the house." No. 15-MJ-0506 (AK-ABJ), 2015 WL 13310427, at *7 (D.D.C. Nov. 16, 2015) (Berman Jackson, J., reversing release order). Still, the *Breeden* court detained the defendant. It doubted that "reliance on the parents—who presumably have to sleep—without any independent monitoring or verification, can supply the necessary assurance that the defendant will not be drawn to the internet during the days and nights when he has absolutely nothing else to do." *Id.*; *see also, e.g.*, *United States v. McIntyre*, No. CR 16-13 (KM), 2018 WL 385034, at *2 (D.N.J. Jan. 10, 2018) (rejecting mother as custodian for defendant who tried to induce a 14-year-old girl to meet with him).

## V. CONCLUSION

The United States respectfully requests that, consistent with the statutory presumption of detention and the record here, the Court order Defendant Nathanial Alfonso Burke detained pending any trial on his child exploitation offenses.

DATED: April 29, 2024                                              Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/ *Matthew Chou*
MATTHEW CHOU
Special Assistant United States Attorney