ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6511
      FAX: (415) 436-7234
      matthew.chou2@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:24-mj-70635-MAG |
| Plaintiff, | **UNITED STATES' EMERGENCY MOTION TO (1) REVOKE RELEASE ORDER AND ORDER DEFENDANT DETAINED (2) TEMPORARILY STAY MAGISTRATE JUDGE'S ORDER GRANTING RELEASE AND [PROPOSED ORDER]** |
| v. | |
| NATHANIAL ALFONSO BURKE, | |
| Defendant. | Court: Hon. Vince Chhabria or Hon. Beth Labson Freeman (Duty Calendar) |

## NOTICE OF MOTION

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 30, 2024, the United States of America, pursuant to 18 U.S.C. § 3145, will and hereby does respectfully appeal United States Magistrate Judge Sallie Kim's pretrial release order issued on April 30, 2024 at approximately 11:10 a.m., and moves this Court for entry of an order revoking the magistrate court's release order. The magistrate court issued a temporary stay of the release order for 24 hours, which will lift on or about 11:10 a.m. on May 1, 2024. The United States accordingly files this emergency motion and further moves this Court to extend the stay of the magistrate court's release order until such time as the motion can be heard.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The United States moves to revoke the magistrate court's order granting pre-trial release to Defendant Nathanial Alfonso Burke. The nature of the offense, the weight of the evidence, and Burke's history and characteristics all show—on this Court's *de novo* review—that Burke cannot overcome the statutory presumption in child exploitation cases that no condition, or combination of conditions, exists that will reasonably assure the defendant's appearance and the safety of the community.

The facts cannot be put delicately. Defendant Burke's words and deeds show he wants to rape girls as young as 11 years old. Last Thursday, on April 25, 2024, Burke took a day off work, put condoms in his pocket, and drove for over an hour and a half to a hotel in Rohnert Park to have sex with the 11-year-old "Maisy." Just days before, Burke had told Maisy precisely what he wanted to do to her. He sent her and her "father" images depicting the oral and vaginal rape of prepubescent girls. And as early as January 2021, Burke had distributed other images and videos too, which similarly showed the rape of girls as young as seven.

All the while, Burke knew his victim was 11 years old and that his actions were illegal. But as he explained, "I know that once we are all together and talking[,] I will not have a problem lol[.] she's just stupid cute[.] *I keep looking for girls her age*." (Emphasis added.) Or—as he explained while fantasizing about his teenage niece and sharing a photo of her—"there bodies are just blooming and there sexy as hell[.] it started because I love incest[,] and I feel like once you go down the rabbit hole[,] you kinda go by young." Prepubescence especially attracted him. "Maybe when she's just a bit older we can start stretching her out a bit getting her ready . . . honestly I wouldn't mind trying my dick out on here [sic]," Burke wrote about Maisy. Burke spared no details, down to his ejaculating on "ether [sic] her face or body . . . Maybe both."

Thankfully, "Maisy" and her "father" were undercover FBI employees who had found Burke's disturbing online posts, which solicited incest with "real parents" in the Mendocino area. If Burke were released, though, there is no guarantee the community would remain safe a second time. Burke will have relatively easy access to children if he is released. He is a bus driver for the Mendocino Transit Authority, whose riders include many children. His release would also endanger and distress Burke's

teenage niece and any other minor relatives, given that Burke fanaticized about her and sent her photo to many apparent strangers on an encrypted messaging application.

What's more, Burke poses a risk of flight. He has traveled recently to Mexico twice and enjoys it there. And he has every incentive to flee there or elsewhere. He has never faced accountability before. Yet now he confronts a mountain of evidence (including a *Mirandized* confession), at least five years' imprisonment, a Guidelines range of about 210 to 262 months, and 25 years on the national sex offender registry, among other penalties.

All told, Burke cannot rebut the statutory presumption that he is a danger to the community and a risk of flight. The Court should order him detained pending any trial on his child exploitation offenses.

## II.    BACKGROUND

Described below are Defendant Burke's (A) history of child pornography distribution and interest in incest as early as January 2021; (B) his latest distribution of child sexual abuse material (CSAM or "child pornography") and attempt to entice/rape an 11-year-old girl; and (C) his distribution of CSAM to the 11-year-old, his arrival at a hotel with condoms, and his post-arrest statements. Summarized last is (D) Burke's detention hearing and conditions of release.

### A.    Defendant's History of Child Pornography Distribution and Interest in Incest

Burke distributed CSAM even before committing the charged offenses. In January 2021, Kik Messenger reported the account belonging to Nathan_Burke@yahoo.com to the National Center for Missing & Exploited Children (NCMEC). On Kik, Burke had distributed at least 17 CSAM files—including videos depicting the rape of girls as young as 7 years old—from IP addresses linked to the San Francisco Bay Area. These videos showed, for example:

- A female minor (about 7–10 years old) orally copulating a male's penis. At the end of the video, the female minor is seen undressing and the video ends with recording device focused on her exposed buttocks.

- A female minor (about 14–16 years old) being vaginally penetrated by a male penis. The female minor is fully nude. The female minor is laying down on her back in the back seating row inside a vehicle while being penetrated. No pubic hair was observed.

- A female minor (about 10–12 years old) standing fully nude in front of a recording device. The female minor walks up and exposes her vagina; lowers herself to the ground so the focal point is on her chest and rubs her nipples; and stands up and turns around and exposes her anus to the recording device. An unknown female minor walks into the room and quickly leaves. The female minor who was fully nude quickly begins to dress herself. No pubic hair was observed.

Then, as early as January 2022, Burke began soliciting "real parents" to gratify his interest in minors and incest. He posted on an online forum under the username "Nathan666"—an account registered under his actual birthdate, physical location, and occupation. On January 17, 2022, for example, Burke posted "I would love to talk to real parents who enjoy there [sic] families and hear your story and how you got started" on a thread titled "Real Parent?" On September 2, 2022, Burke wrote "Anyone want to talk let's talk some incest here's my number" and listed his actual cell phone number. And on February 25, 2024, Burke posted, "Mendecino here willits [sic] to be exact always down to talk to local new friends."

**B.     Burke's Distributes CSAM and Tries to Entice/Rape an 11-Year-Old Girl**

Burke eagerly took the opportunity to distribute more CSAM and to rape an 11-year-old girl. Specifically, from February 22, 2024 through his arrest on April 25, 2024, Burke messaged—and then took off work and drove over an hour to meet—individuals he thought were a divorced father and his 11-year-old daughter. In truth, these individuals were undercover employees of the Federal Bureau of Investigation.

Burke's scheme to entice a minor began on February 22 when an FBI online covert employee (OCE) messaged Burke, "[d]ivorced dad from the Bay Area so not too far from you. Also looking to talk with people with experiences or fam of interests. Let me know if you want to chat." Burke accepted the OCE's message request and quickly turned his focus to actual minors, not idle fantasy. Burke wrote, "you said you are a divorced dad how old is your kid and have you ever had thoughts of them?" Upon learning that "the kid" was 11, Burke replied: "Ohhh amazing age she's just starting to grow into her body very hot [Red Face with sweat emoticon] you're a lucky dad."

Soon thereafter, Burke was "getting ahead of [him]self," in his own words. Within hours of the OCE's first message, Burke was already proposing sexual contact with the OCE's 11-year-old daughter. Burke wrote, for example:

> Burke: Man I can't lie I'd be **soo hot to watch and play with you guy like damn I know I'm getting ahead of myself** but I just had to say it outloud lol [Laughing Face with tears emoticon]
>
> OCE:   I feel the same way. Hard for me not to get that mental image out of my head
>
> Burke: What part turns you on the most for me it's just knowing she's your

1    daughter and how she probably loves playing with dad damn I'm hard

2    Burke: **Want to see what your daughter can play with? Definitely ok to
     say no**

3

4    OCE:   I'm turned on about the idea of sharing her and watching her

5    OCE:   Yeah I'd love to see what she could maybe have at some point!

6    Burke: [Photo submitted. The photo depicts an adult male penis with a
     hand around the shaft. The male body is laying on a bed and has pants
     pulled down.]

7

8    Burke: Think she would like this **god the thought of her naked body
     licking my cock**

9    (Emphasis added.)

10         Meanwhile, there was no question of Burke's identity. Burke sent a photo of himself to the OCE,

11   which is easily comparable to his California DMV photo. And later, Burke sent photos of tattoos on his

12   arms that match tattoos posted on his Facebook profile.

13         Just a day after meeting the OCE, Burke shared a photo of his teenage niece and his sexual

14   interest in her. Burke wrote, "my favorite age is 13 to 16 and honestly because there just soo damn hot

15   there bodies are just blooming and there sexy as hell it started because I love incest and I feel like once

16   you go down the rabbit hole you kinda go by young." Burke elaborated, "there's just something about

17   that sweet spot age[.] I think my cousin and niece really helped too although I've always been content

18   with just the fantasy of it like I said before I'd love a open family and that means nudity being common

19   for everyone."[1]

20         On February 23, Burke gave the online covert employee his phone number so that the OCE

21   could add him on WhatsApp. And with the start of their WhatsApp conversation, Burke began sending

22   CSAM depicting the rape of prepubescent girls, including a girl as young as 7 to 9 years old. Burke

23   distributed, for example:

24   •  CSAM photo depicting a minor female approximately 7–9 years old who is on her hands
        and knees about to be penetrated by an adult male's penis. The male is fully nude and
25      both appear to be on a couch.

26   •  CSAM photo of an adult male (face is cut off from picture) about to penetrate a nude

27   _____

28   [1] After law enforcement seized Burke's phone pursuant to a search warrant, FBI investigators
     found that Burke had sent this same photo of his teenage niece to many apparent strangers via Session,
     an end-to-end encrypted messaging application.

minor female approximately 11–13 years old who is on her hands and knees on a bed. Below the female minor is another female nude minor approximately 8–10 years old who is spreading the buttocks of the female open.

- CSAM photo of a female minor approximately 7–9 years old orally copulating an adult male penis. Another female minor approximately 15–17 years old lays underneath the female minor orally copulating the adult male with her tongue pressed against the first female minor's genitalia.

By February 25, Burke proposed sex with the OCE's 11-year-old daughter, "Maisy." Burke stated he would want Maisy "completely naked," "taste her possibly 69," and then "pop wherever she wants . . . her chest or her face." He included with this proposal CSAM photos and videos, including photos of nude girls between eight to 16 years old. And Burke stated he was serious. "[J]ust know I'm very real and definitely want this to happen," he wrote. Furthermore:

- Burke noted that if he didn't have a roommate, the OCE and his daughter Maisy could stay with him for a weekend.

- Burke asked the OCE how to ensure the 11-year-old would know the sexual purpose of their meeting. He stated, "does she know that I want to play with her naked too?" Nathan further stated, "when she's older and we can fuck her it's ganna be crazy amazing like can you picture it".

- Burke sent CSAM of a nude girl on her hands and knees. Burke asked the OCE, "ever see that view with Maisy," and "I can't wait to see her naked".

- When the OCE mentioned Burke wearing condoms, Burke responded, "absolutely I'm all about safe sex."

Starting on February 27, Burke sexually propositioned "Maisy" directly on Google Chat. (Burke's Google profile included the username "Nathan Burke" and email address nathan.burke6662@gmail.com, with 6662 matching the last four digits of his Snapchat handle.) Burke wrote to Maisy, for example, that "once your a little older maybe in like 2 or 3 years it won't hurt anymore" and "it really feels good when you get your pussy licked too." And after Maisy provided Burke with a picture of herself (a digitally altered image of a clothed adult), Burke replied, "just so you know you made me happy with that pic it made me kind hard looking at your beautiful pic." Burke then sent Maisy a picture of an erect penis before deleting it soon after. Burke stated, "honestly I really want to show you how I eat pussy," and "I want to lick your pussy while you play with me."

This all culminated in Burke's plan to meet the 11-year-old Maisy and her father at a hotel in Rohnert Park on April 25. Before that day and his arrest, Burke explained that he would take the day off

1  work so that he would "have all day to play" when Maisy "doesn't have school[.]"

2      And Burke knew what he was doing was illegal and that he could stop anytime. On April 15, for

3  example, Burke asked, "Do you ever feel a little guilty about everything that's kinda what's making me

4  nervous is I always thought it would be fantasy for me and now it can happen," The OCE responded, "I

5  don't want you to feel pressure or anything if you don't want it too." To this, Burke replied, "Ok yeah

6  true very true and I'm not asking because I don't want to I'm just talking it out kinda like getting the

7  gitters out of my system lol." Burke further advised, "I think it's super hot . . . I will feel better when I

8  meet you guys in person I know that my dick will take over from there lol." When the OCE asked what

9  Burke was nervous about, Burke responded, "honestly it's her age and what we want to do it's scary to

10  me because *well it's illegal lol* and I also want us all to click." (Emphasis added.)

11      By April 17, Burke had proposed a hotel location that would prevent his girlfriend from

12  accidentally seeing him or his vehicle on April 25. And Burke wrote, "[Maisy's] age was making me

13  nervous but I know that once we are all together and talking I will not have a problem lol she's just

14  stupid cute *I keep looking for girls her age*." (Emphasis added.)

15      **C.**    **Burke Sends CSAM to the 11-Year-Old and Arrives at a Hotel with Condoms**

16      By April 22, Burke was sending CSAM to the 11-year-old "Maisy" to explain how he wanted to

17  rape her. In an April 22 Google Chat with Maisy and her "father," Burke wrote, "I have a picture that I

18  want you to see because it's kinda something we can try all together." Burke then sent CSAM of a nude

19  minor female performing oral sex on an adult penis. The minor female is sitting on top of another nude

20  female who is performing oral sex on the minor female. And when asked if that was what he wanted to

21  do to Maisy, Burke replied, "Yes I do."

22      While messaging the April 22 Google group chat, Burke was also directly messaging the "father"

23  what he wanted to do to Maisy. Burke wrote, "I want to say eventually I want us to be like this." Burke

24  then sent CSAM of a prepubescent girl wearing only a white tank top being vaginally penetrated by an

25  adult penis. Moments thereafter, Google terminated the chat group and banned Burke's account. Burke's

26  reaction was nonchalant: "I got kicked from the chat I think I probably shouldn't have sent those on the

27  app," but "I don't think I will get in trouble because I can play dumb." And when the online covert

28  employee asked Burke if was going to send any other pictures to Maisy, Nathan sent CSAM of a

prepubescent girl wearing only an animal print headband on her hands and knees being penetrated from behind by an adult male penis.

On April 25, as planned, Burke drove to meet Maisy at a hotel. He started the day by messaging the OCE that he was "even more excited for today." As planned, Burke had taken off work. He drove almost two hours to a pre-arranged hotel in Rohnert Park. Burke had requested a hotel in Rohnert Park (rather than a relatively closer hotel in Windsor) to avoid possibly running into his girlfriend, who lives near Windsor. As planned, Burke parked in the hotel lot. And Burke walked all the way up to the second floor of the hotel to look for the agreed-upon room. Burke nervously messaged the OCE, "I think my brain won't let me just walk to a hotel room without meeting the person[.] *I've watched to much cops lol* [crying face emoji]." (Emphasis added.)

Law enforcement arrested Burke at the hotel pursuant to a federal complaint signed by United States Magistrate Judge Alex G. Tse. In Burke's pocket, investigators found the condoms he planned to wear for sex with Maisy. On his phone, investigators found the encrypted messaging applications he had used to message the OCE, as well as Burke's messages with other individuals. And after *Miranda* warnings, Burke largely confessed his misconduct. His interview was recorded.

### D.    Burke is Ordered Released To His Mother's Custody

On Friday, April 26, 2024, Burke made his initial appearance on the criminal complaint before United States Magistrate Judge Kandis A. Westmore, who held a consolidated calendar that included San Francisco venue cases. At the initial appearance, the government moved for detention. To give the Federal Public Defender's Office time to meet with Burke, Judge Westmore set a status conference before Judge Tse on Monday, April 29.

On April 29, Judge Tse set Burke's detention hearing for April 30. In addition, Pretrial Services filed a report recommending Burke's release to his mother's custody on a $25K unsecured bond (co-signed by his mother's boyfriend) and mandatory Adam Walsh conditions (Dkt. 13). The government filed a memorandum in support of its motion for detention (Dkt. 14). There, as here, the government argued that Burke is a danger to the community and risk of flight—and that he has not (and cannot) rebut the statutory presumption for detention.

On April 30, Judge Kim held the detention hearing. And after hearing a brief proffer from the

government and the defense, the court adopted Pretrial Services' proposal. The court ordered Burke released to his mother's custody after a 24-hour stay to allow for the government's appeal. Thus, without this Court's action, Burke will be released on or about 11:10 a.m. on Wednesday, May 1, 2024.

The magistrate court did not state at length its reasons for ordering release. (As of this filing of this emergency motion, the government has not yet received the audio of the detention hearing.) Nor did it hold argument on the adequacy of Burke's mother's boyfriend as a surety; he makes $42K per year, reports no assets, and is 62 years old. But the court did appear to find that Burke's mother would be an appropriate custodian. The court rejected the government's proffer in response that—though it may be difficult for Burke's family to accept, and repulsive as it may sound—Burke poses a sexual threat to members of his family. In his WhatsApp messages, Burke had written that he has an "obsession" not just with prepubescent minors, but also with incest. The government noted that Burke has had sexual urges about the proposed custodian, among other minor and adult family members. Burke wrote, for example: "I saw my mom naked at 13 and found my hot cousins nudes in high school" (after "messing around on her computer") and "the obsession just grew from there[,] and obviously with incest most of the time young is involved."

## III.    LEGAL STANDARD

On appeal of a magistrate judge's release order, this Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The record is not limited to those facts that were presented to the magistrate judge; rather, the Court should "make its own 'de novo' determination of the facts," and the "ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193.

The Court shall detain a defendant before trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk—the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a

flight risk need only be supported by a preponderance of the evidence. *Id.*

The Bail Reform Act mandates a rebuttable presumption of detention if there is probable cause to believe that the defendant has committed certain offenses. *See* 18 U.S.C. § 3142(e)(2)–(3). These offenses include, among others, "an offense involving a minor victim under" 18 U.S.C. § 2252(a)(2) (distribution of child pornography) and § 2422 (enticement of a minor). *Id.* § 3142(e)(3). "If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four factors in determining whether the pretrial detention standard is met." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Those factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *see United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). That said, "[t]he presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption 'remains in the case *as an evidentiary finding militating against release*, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (emphasis added) (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

What's more, the rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f)(2)(B). At a detention hearing, the government may proffer evidence sufficient to inform the court of the defendant's role in the offense, the weight of the evidence against the defendant, and other

1    relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

2    **IV.   ARGUMENT**

3          Burke cannot rebut the statutory presumption that "no condition or combination of conditions

4    will reasonably assure the appearance of the person as required and the safety of the community." 18

5    U.S.C. § 3142(e)(3), (e)(3)(E); *see Hir*, 517 F.3d at 1086 (explaining that the presumption is "an

6    evidentiary finding militating against release" even when defendant proffers evidence to rebut it). Burke

7    is a danger to the community who also poses a flight risk. *See, e.g.*, *United States v. Petersen*, No. 17-

8    CR-00259-CRB-1/JD, 2017 WL 2179591, at *4 (N.D. Cal. May 17, 2017) (revoking release order in

9    "mere" possession case even without the presumption of detention); *United States v. Marigny*, No. 20-

10   MJ-70755-MAG-1, 2020 WL 4260622, at *1, 3 (N.D. Cal. July 24, 2020) (revoking Judge Kim's release

11   order because "the nature of the offense of possessing child pornography weighs in favor of detention");

12   *United States v. Pullen*, No. CR 12-00829 CW, 2012 WL 10467455, at *1 (N.D. Cal. Dec. 28, 2012)

13   (revoking release order in distribution case).

14         **A.   Releasing Burke Would Endanger the Community.**

15         Burke sought to rape an 11-year-old girl. On April 25, he took a day off work, bought condoms,

16   and drove for over an hour and a half to a hotel in Rohnert Park to meet "Maisy"—a girl to whom he

17   had sent CSAM and photos of his erect penis just days before. Burke did all this even though he knew it

18   was illegal, and even though the online covert employee (OCE) wrote to him, "I don't want you to feel

19   pressure or anything if you don't want it too."

20         Burke's targeting of Maisy fits a pattern. "I keep looking for girls her age," as Burke wrote

21   recently. And as early as January 2021, Burke distributed CSAM on Kik that depicted the oral and

22   vaginal rape of girls as young as 7–10 years old and 14–16 years old. Between then and now, he sent

23   many strangers a photo of his teenage niece. Burke shared with the OCE, for example, that "[his] cousin

24   and niece really helped" spur his interest in "that sweet spot age" where "there [sic] just soo damn hot

25   there bodies are just blooming." And his pedophilia has only worsened. Burke wrote, "it started because

26   I love incest and I feel like once you go down the rabbit hole you kinda go by young." He "thought

27   about [] a lot" how he would groom even his own children for sexual abuse. "I would slowly introduce

28   them to playing around 7 or 8 to help me with mom or vise versa," Burke wrote, "and obviously having

them suck and finger around 10 or so[.] I've thought about it a lot to be honest."

Burke will also have relatively easy access to children if he is released. He is a bus driver for the Mendocino Transit Authority (MTA), which provides public transportation for Mendocino County. About 15 percent of MTA riders are youths under 19 years old. *See* Mendocino Transit Authority, *Mendocino Countywide Transit Ridership Survey: Final Report* at 20–21 (2015). Many are as young as 6 to 18 years old. *See* Mendocino Transit Authority, *2011–2015 Short Range Transit Development Plan* at 13, 77 (Nov. 2011) (describing MTA's partnerships with the Boys and Girls Club and a non-profit in Willits). Burke has expressed and acted upon his sexual attraction to essentially this entire age range.

And even if Burke had never sought to rape an 11-year-old, his distribution and possession of child pornography alone "weighs heavily against release." *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *7 (D.D.C. May 8, 2019) (Howell, C.J., reversing release of defendant). That is because "the distribution and possession of child pornography constitutes a danger to the community, resulting in physical and mental harm to the children depicted, normalizing such conduct among those sharing this contraband, and creating a market for such contraband, and thereby encouraging the victimization of more children. These significant harms and dangers animated the Congress to create the statutory presumption of detention in these cases." *Id.*; *accord United States v. Kearney*, 672 F.3d 81, 94 (1st Cir. 2012) (quoting statutory findings from 1996, 2006, and 2007). In other words, "[t]he child pornographer simply cannot be analogized to the garden-variety drug user convicted under 21 U.S.C. § 844(a) of possessing a controlled substance, who is, practically speaking, his own victim. The child pornographer victimizes not *himself*, but *children*." *United States v. Boos*, 127 F.3d 1207, 1210 (9th Cir. 1997) (emphasis in original) (condemning the distribution of CSAM); *see also, e.g.*, *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008) ("[M]erely possessing child pornography is not a victimless crime; it fuels the demand for the creation and distribution of child pornography."); *United States v. Blinkinsop*, 606 F.3d 1110, 1117–18 (9th Cir. 2010) (explaining how the distribution of CSAM exacerbates "ongoing harm" to depicted victims).

**B.     Releasing Burke Would Fail to Reasonably Assure His Appearance.**

No condition or combination of conditions would reasonably assure Burke's appearance at proceedings pending trial. Three independent reasons show why.

First, Burke poses a serious risk of flight, particularly to Mexico. As he has stated to the OCE, Burke has traveled more than once to Mexico and enjoys it there. Law enforcement's database checks confirm that Burke has traveled to Mexico in both 2021 and 2023. And as Burke's job and his April 25 drive to the hotel show, he is willing to drive hours to get what he seeks.

Second, the charged offenses are gravely serious. CSAM distribution alone carries 5 years of mandatory minimum imprisonment and 25 years on the national sex offender registry as a tier II sex offender. *See* 18 U.S.C. § 2252(b)(1) (mandatory minimum); 34 U.S.C. §§ 20911 (defining sex offender tiers), 20915 (registration period). And Burke's Sentencing Guidelines range is approximately 210 to 262 months, even after acceptance of responsibility, because his specific offense characteristics are aggravating. Among other things, Burke distributed (1) material involving prepubescent minors; (2) to a minor with the intent to entice the minor to engage in prohibited sexual conduct; (3) material portraying sadistic or masochistic conduct or other depictions of violence;[2] and (4) at least 150 images. *See* U.S.S.G. §2G2.2(b)(2), (3)(E), (4). He faces prison, and years of it, for the first time.

And third, the strength of the evidence makes it likely Burke will face these serious penalties—a likelihood that makes it in his interest to flee. *See* 18 U.S.C. § 3142(g)(2); *see, e.g.*, *United States v. Cuong Cau Dang*, No. 13-CR-486-EJD (PSG), 2013 WL 4119426, at *3 (N.D. Cal. Aug. 9, 2013) ("It is fair to conclude that [defendant] might have a heightened motivation to flee if the government's evidence is relatively strong."); *United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023) (citing weight of evidence to affirm detention order), *cert. denied*, No. 23-6716, 2024 WL 899487 (U.S. Mar. 4, 2024). Before his arrest, Burke spent nearly two months distributing CSAM to an FBI online covert employee and confirming his identity by, for example, sending photos of his face and tattoos. Burke was then arrested at a hotel, with condoms in his pocket, after describing in graphic words and CSAM how he wanted to rape an 11-year-old girl. And after his arrest, Burke largely admitted guilt in a recorded and *Mirandized* interview.

---

[2] The Ninth Circuit has "joined multiple circuits in holding that images involving an adult male penetrating prepubescent children are sadistic or masochistic because the conduct depicted 'necessarily hurt the child.'" *United States v. Shouse*, 755 F.3d 1104, 1107 (9th Cir. 2014) (quoting *United States v. Rearden*, 349 F.3d 608, 614–16 (9th Cir. 2003)).

**C.      The Ordered Release Conditions Are Inadequate.**

On appeal, Burke's counsel will likely point to Burke's lack of criminal history, his family ties to the Bay Area, and the fact that Burke sought to entice an undercover FBI employee rather than a real minor. But this all fails to rebut the presumption of detention, as courts across the country have found. *See, e.g.*, *United States v. Campas*, No. 24-4024, 2024 WL 1526286, at *2 (10th Cir. Apr. 9, 2024) (per curiam) (detaining defendant who tried to entice an undercover FBI agent even though the defendant had no valid passport and no convictions); *United States v. Pieper*, No. 23-50910, 2024 WL 229266, at *1 (5th Cir. Jan. 22, 2024) (per curiam) (detaining defendant despite "lack of criminal history, United States citizenship, and family ties"); *United States v. Furlow*, No. 20-CR-30050, 2020 WL 6286228, at *5 (C.D. Ill. Oct. 27, 2020) (detaining defendant who messaged undercover agent despite defendant's "remote" and limited criminal history). Time and again, courts have detained similarly situated defendants given their risk of flight and danger to the community.

Burke has also proposed (and Judge Kim accepted) his mother as his custodian. But district courts have found parental custodians generally inadequate in cases such as Burke's. In this District, for example, United States District Judge James Donato revoked the release order of a defendant charged "only" with possession of child pornography at the time of the hearing. *See Petersen*, 2017 WL 2179591, at *3. In so doing, Judge Donato rejected the defendant's father as a *full-time* custodian. *Id.* at *4. The court reasoned that "[s]everal courts have recognized the virtual impossibility of controlling access to the internet" where (as here) the defendant is skillful at using applications "such as Kik." *Id.*

Courts across the country are in accord. Consider three examples. In *United States v. Super*, the district judge ordered the defendant detained even though "[defendant]'s parents would make a good faith effort to dutifully serve as third-party custodians." No. 3:23-CR-05233-BHS, 2023 WL 5952715, at *4 (W.D. Wash. Sept. 13, 2023). The *Super* court reasoned, among other things, that custodianship was "likely not sufficient to keep [defendant] offline and unable to access websites where he could solicit or consume child pornography." *Id.*

Second, in *United States v. Breeden*, the defendant "point[ed] to the lack of any prior criminal history, the lack of evidence beyond his own statements that he ha[d] ever been involved in similar conduct before, his willingness to be cut off from the internet and access to a computer entirely, his

1  parents' willingness to serve as custodians, the shame that he and his family have already suffered as a

2  result of his arrest and incarceration, and the fact that Pretrial Services would be notified if he left the

3  house." No. 15-MJ-0506 (AK-ABJ), 2015 WL 13310427, at *7 (D.D.C. Nov. 16, 2015) (Berman

4  Jackson, J., reversing release order). Still, the *Breeden* court detained the defendant. It doubted that

5  "reliance on the parents—who presumably have to sleep—without any independent monitoring or

6  verification, can supply the necessary assurance that the defendant will not be drawn to the internet

7  during the days and nights when he has absolutely nothing else to do." *Id.*

8      Lastly, in *United States v. McIntyre*, the defendant proposed his mother as custodian and noted

9  many mitigating factors, such as "the lack of actual physical contact between himself and the victims;

10  his dependability and lack of criminal involvement; his good personal character and financial

11  responsibility;" "willingness of community members to vouch for the defendant"; "evidence of good

12  works in the church and community"; and the fact that "[*McIntyre*] was 'only' a social media case, not

13  one involving in-person contact." No. CR 16-13 (KM), 2018 WL 385034, at *4–5 (D.N.J. Jan. 10,

14  2018). But the *McIntyre* court detained the defendant because he had messaged a 14-year-old girl to try

15  to have her meet with him. *See id.* at *5. The case for detaining Burke is even stronger. Unlike the

16  *McIntyre* defendant, Burke not only sent messages and prepubescent CSAM, but also drove hours to a

17  hotel to have sex with an 11-year-old girl.

18  **V.    CONCLUSION**

19      The United States respectfully requests that, consistent with the statutory presumption of

20  detention and the record here, the Court order the Defendant detained pending any trial on his child

21  exploitation offenses. In the alternative, the United States requests this Court to extend the stay of the

22  magistrate court's release order, if necessary, until such time as the motion can be heard.

23  DATED: April 30, 2024                              Respectfully submitted,

24

25                                                     ISMAIL J. RAMSEY
                                                       United States Attorney
26

27                                                     /s/ *Matthew Chou*
                                                       MATTHEW CHOU
28                                                     Special Assistant United States Attorney

1   ISMAIL J. RAMSEY (CABN 189820)
    United States Attorney
2
    MARTHA BOERSCH (CABN 126569)
3   Chief, Criminal Division

4   MATTHEW CHOU (CABN 325199)
    Special Assistant United States Attorney
5
          450 Golden Gate Avenue, Box 36055
6         San Francisco, California 94102-3495
          Telephone: (415) 436-6511
7         FAX: (415) 436-7234
          matthew.chou2@usdoj.gov
8
    Attorneys for United States of America
9
                        UNITED STATES DISTRICT COURT
10
                      NORTHERN DISTRICT OF CALIFORNIA
11
                          SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,              )   **CASE NO. 3:24-mj-70635-MAG**
                                           )
14          Plaintiff,                     )   **[PROPOSED] ORDER STAYING ORDER**
                                           )   **GRANTING RELEASE OF DEFENDANT**
15      v.                                 )
                                           )
16  NATHANIAL ALFONSO BURKE,               )
                                           )
17          Defendant.                     )
                                           )
18  _____)

19          For good cause shown, the United States' motion for a stay of Magistrate Judge Sallie Kim's

20  order granting release to defendant Nathanial Alfonso Burke in the above-captioned case is GRANTED.

21  The release order is STAYED until _____, when the parties will appear before the Court. It is

22  further ORDERED that defendant is to remain in custody of the United States Marshals Service until

23  further order of this Court.

24          Dated:

25

26                                             _____
                                               HONORABLE VINCE CHHABRIA
27                                             United States District Judge

28