JODI LINKER
Federal Public Defender
Northern District of California
ELIZABETH M. FALK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:           elizabeth_falk@fd.org

Counsel for Defendant BURKE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | Case No.: CR 24-MJ-70635 MAG |
|---|---|
| Plaintiff, | **OPPOSITION TO GOVERNMENT'S APPEAL OF MAGISTRATE JUDGE'S BONDED RELEASE ORDER** |
| v. | |
| NATHANIAL BURKE, | Court:   Hon. Vince Chhabria |
| Defendant. | Date:    May 3, 2024 |
| | Time:    11:30 a.m. |

**INTRODUCTION**

The government seeks to have defendant Nathanial Burke detained primarily because he is charged with a serious crime that is morally and ethically shocking. And while the complaint against Mr. Burke is certainly ugly, that is the least important factor for this Court to consider under the Bail Reform Act. Importantly, Mr. Burke in no way disputes that the charge and punishments he is facing are serious, and that the conduct accused against him is seriously disturbing. The issue now before the Court, however, is not whether Mr. Burke should ultimately go to prison. The issue is whether or not Mr. Burke is the type of defendant who will strictly follow the rules set by the Court while awaiting trial, which will remove any possible ability he could have to be a danger to the community pending trial. It cannot be overstressed that at this stage of the case, the Bail Reform Act requires that the Court look <u>beyond the charges</u> and instead consider Mr. Burke's individual circumstances to determine whether any combination of conditions will reasonably assure his court appearance and the safety of the community.

A careful review of the government's 16-page brief recommending detention cites zero credible factors referenced in the Bail Reform Act <u>other than</u> the charged conduct. In *every other regard* Mr. Burke is a model candidate for pretrial release. He has zero criminal record, a fifteen-year full time work history, lifelong residence in the Bay Area, a supportive family by his side, and no substance abuse indications other than sporadic, recreational drug use at punctuated times. Importantly, there is zero indication in this case that Mr. Burke will be unable to follow the Court's strict release orders, including orders to stay off unmonitored internet and stay completely away from minors. Absent contrary indication, defendants in pretrial status should be trusted to follow all Court orders. Mr. Burke is presumed innocent of the charged conduct, and this Court must decide this matter accordingly.

Both U.S. Pretrial Services Office and the Honorable Sallie Kim thoughtfully considered Mr. Burke's particular circumstances and determined that there are conditions that can be imposed to fulfil the mandates of the Bail Reform Act. The stringent conditions imposed by Judge Kim, including, but not limited to, a $25,000 bond co-signed by his stepfather, a custodian (his mother) who will live full time at home with Mr. Burke, electronic monitoring, and basically lock-down at his parents' home

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ–70635 MAG

1

other than for work or authorized purposes, no internet use other than one monitored device, and no contact with minors whatsoever (other than family members in the presence of that parent) are adequate to ensure Mr. Burke' appearance in court and the safety of the community.  The decision of Magistrate Judge Kim, upon the guidance of Pretrial Services, is both legally justifiable and factually sound.  The Court should deny the government's motion.

## PROCEDURAL HISTORY

On April 26, 2024, Mr. Burke made his initial appearance at the consolidated duty calendar held in Oakland, California.  He next appeared before Magistrate Judge Kim on April 29, 2024 and April 30, 2024, at which time Judge Kim held a detention hearing.[1]  Pretrial Services submitted a bail report recommending that Mr. Burke be released on a $25,000 unsecured bond with the stringent release conditions that are required in (and designed for) Adam Walsh Act-type cases.  *See* Pretrial Services Report ("PT"), Dkt. 13, at 1. After careful review of the circumstances of the case, Judge Kim released Mr. Burke on the stringent conditions recommended by Pretrial Services after speaking with the proposed surety (his stepfather, Roger Ramirez) and custodian (his mother Bernadette Arambula), finding both persons suitable to serve in those roles.

The bond was executed, but Mr. Burke's release was stayed at the government's request to allow time for this appeal.

## FACTUAL BACKGROUND

**I.   Mr. Burke's family background, residential history, educational and employment record.**

Mr. Burke is currently 33 years old.  He was born to Bernadette Arambula and Shane Burke in Ft. Bragg, California, and has largely resided in Willits, California for his entire life.  *See* PT at 1. Thankfully, his family and step family are tight and supportive. Mr. Burke is the middle sibling in his immediate family. His two brothers live in North Carolina and Willits respectively, and he enjoys strong relationships with both involving either daily or weekly contact. *Id.* He also enjoys daily contact with his mother, Bernadette and his stepfather, Roger Ramirez.  *Id.* Mr. Burke's father resides in Point Arena, California, and was not called upon to be a surety here because Pretrial Services did

---

[1] The recording of the detention hearings held before Judge Kim was submitted by email to the Court by the government.  References to that recorded are contained herein.

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ–70635 MAG

2

not even deem it necessary to find additional sureties other than Mr. Ramirez and Ms. Arambula, who would potentially house Mr. Burke upon his release.

Mr. Burke graduated from Willits High School in 2009. *Id*. at 4.  Following high school, he went to vocational school in auto mechanics, but decided instead to become a delivery driver.  For ten years, Mr. Burke worked as a full-time delivery driver for Fed-Ex. *Id*. at 3.  Subsequently, in 2021 Mr. Burke got a job with the Mendocino Transit Authority and works as a bus driver from 8-5 pm, Monday through Friday.  *Id.* As of this filing, he has not been let go from that position and his family believes, based on discussions with his supervisor, that he could eventually return to his job driving a bus should he be released. His stepfather, Roger Ramirez, reports to counsel that Mr. Burke has a good relationship with his supervisor at work – and because Mr. Ramirez also works at MTA, he has inside knowledge of Mr. Burke's reputation there.

Importantly, Mr. Burke was not living with his mother and stepfather at the time the instant offenses allegedly occurred.  *Id*. at 1 (showing that for the past year, Mr. Burke has resided at 2101 Valley Road in Willits, California.)  The proposed residential situation with his parent and stepparent at 56 Ft. Bragg Road in Willits would involve much more supervision and monitoring than Mr. Burke had at the time the alleged offenses.

**II.     Mr. Burke has no criminal history at all.**

Mr. Burke has never been arrested for any crime before this case.  He has no prior criminal convictions.

**III.    Mr. Burke's use of substances has strictly been recreational as he has been drug tested for work as a delivery/bus driver for the last 13 years.**

In a demonstration of scrupulous honesty during his pretrial services interview.  Mr. Burke acknowledged recreational, occasional use of marijuana and cocaine with his ex-fiance 1-2 years ago. Although he tried illicit substances in his 20s, the use has been sporadic and recreational.  He also stressed during the interview that due to the fact that he has been drug tested as a delivery driver and has been subjected to random drug screenings for the last 13 years, he did not frequently consume illicit substances and solely did cocaine on the occasional weekend when he was in a romantic relationship that ended over a year ago.  *See* Declaration of Elizabeth Falk ("Falk Decl.") at ¶ 3. His

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ-70635 MAG

3

marijuana use was similarly sporadic and has ceased completely since he became a driver for MTS. *Id.*

# ARGUMENT

## I. Legal Standard

Prior to a conviction, the Bail Reform Act of 1984 requires a court to release a person charged with an offense pending trial, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court does not believe that a person's pretrial release on his or her own recognizance will assure the person's appearance or the safety of the community, the judge should impose the "least restrictive further condition, or combination of conditions" necessary to mitigate the risks of nonappearance or danger to the community. 18 U.S.C. § 3142(c)(1)(B). The government bears the burden of proving by clear and convincing evidence "that a defendant is a danger to any other person or the community." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Barnett*, 986 F. Supp. 385, 403 (W.D. La. 1997) (ordering release of defendants charged with murder for hire). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Burke*, 794 F.3d 1088, 1090 (9th Cir. 2015). Under the Bail Reform Act, the factors to be considered include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .
> (2) the weight of the evidence against the person;
> (3) the history characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The weight of the evidence against the defendant is the least important factor.

*Hir*, 517 F.3d at 1090.  "[T]he statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).  "The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

The government is legally correct that the pending charges against Mr. Burke raise a *rebuttable* presumption of detention under the Bail Reform Act.  *See* 18 U.S.C. § 3142(e).  Notwithstanding this provision as to whether a defendant should be detained, "[t]he ultimate burden of persuasion remains on the government and the burden placed on the defendant to rebut the presumption is small." *United States v. Chen,* 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) (citations omitted); *see also United States v. Moore,* 607 F. Supp. 489, 497 (N.D. Cal. 1985) ("the rebuttable presumption shifts only a burden of production to defendant").  Accordingly, the government "retains the burden throughout the proceeding" of proving that no combination of conditions would reasonably assure the defendant's appearance at trial or the safety of the community.  *Moore,* 607 F. Supp. at 497.  "The defendant need only produce some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption." *Chen,* 820 F. Supp. at 1207 (N.D. Cal. 1992) (citation and internal quotation marks omitted); *see also United States v. Youngblood,* 2009 WL 773539 (N.D. Cal. Mar. 23, 2009) at *2 (quoting *Chen* in explaining that the burden on the defendant to rebut a presumption of detention "is not onerous").

II. **As United States Pretrial and Magistrate Judge Kim Correctly Determined, Mr. Burke Has Successfully Rebutted the Presumption in this Case.**

Mr. Burke has rebutted the presumption of detention in this case.  As an initial matter, the Pretrial Services report recommending his release on conditions itself serves as "some credible evidence" rebutting the presumption.  *See, e.g., United States v. Nicholas,* 681 F. Supp. 527, 529 (N.D. Ill. 1988).  Moreover, Mr. Burke's willingness to submit to electronic monitoring as a condition of his release also rebuts the presumption, as does his stepfather and mother's willingness to sign a bond and serve as a custodian.  *See, e.g., United States v. O'Brien,* 895 F.2d 810, 816 (1st Cir. 1990) (presumption rebutted by electronic monitoring and real property); *see also United States*

<pre>
</pre>

*v. Leyba,* 104 F. Supp.2d 1182, 1183-84 (S.D. Iowa 2000) (presumption rebutted by electronic monitoring and third-party custodian).

Specifically, Mr. Burke proffers the following facts and circumstances in support of his motion for pretrial release, which more than meet his burden of rebutting the presumption:

First, Mr. Burke has significant ties to the Northern District North Bay community and neither the desire nor sophistication to leave his family and long-known life behind. Mr. Burke has lived in the Bay Area (specifically, Willits, California with a year stay in Brentwood with a fiance) for his entire life. His parents, brother and stepfather all live in the North Bay and have regular contact with Mr. Burke. His family members are law-abiding, decent people; at the hearing the prosecutor found no fault with any of them except to apparently criticize Mr. Burke's stepfather's blue-collar income, which presents serious due process problems. Gov. Motion at 9. Accordingly, one of the conditions of the bond signed by Magistrate Judge Kim is that Mr. Burke reside with his mother and stepfather, and that his mother serve as custodian. Contrary to the government's argument, U.S. Pretrial Services determined that both are viable sureties/custodians.

Nor can the government argue that the nature of Mr. Burke's alleged crimes suggest that would be the type of defendant to flee.[2] For example, the government acknowledges that the social media account and online forum Mr. Burke allegedly posted in contains his actual birthday, physical location, and correct first name and occupation. Gov. Mot. at 4:3. He even allegedly used his real, full name in his email address, and openly sent photographs of his face and tattoos. Gov. Mot. at 3:18; 13:21. These alleged crimes, while certainly terrible, do not appear to involve the work of a surreptitious individual likely to skip town and leave his parents high and dry. This is not a case of an alleged criminal mastermind employing false identities who would have the instinct or even the

---

[2] In this vein, the government's argument that Mr. Burke poses a risk of flight because he took two short pleasure trips to Mexico with his father and stepmother on vacation and apparently "enjoys it there" borders on nonsensical. Gov. Mot. at 13:2. As Mr. Burke informed Pretrial Services during his interview, his sole trips to Mexico involved (1) his father's remarriage to his new stepmother, when he attended the actual wedding, and (2) a subsequent trip there because the new stepmother has a timeshare and the family went to celebrate her birthday. Falk Decl. ¶ 4. Plenty of people, the undersigned included, "enjoy" the occasional margarita on a beach in Mexico. Occasional vacation trips to Mexico does not mean that a person will *flee* to Mexico as a permanent measure when faced with federal charges. Here, the defendant has zero proven resources in Mexico, no family in Mexico, and does not even speak Spanish.

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ-70635 MAG

6

ability to leave the shelter of his community and set up a false life abroad.

Second, Mr. Burke has zero criminal history.

Third, Mr. Burke agreed – without any objection – to be released on all of the conditions recommended by Pretrial Services, including electronic monitoring, lockdown absent approved purposes, no internet other than on a monitored device, and no contact with minors other than family with a parent present.  PT at 6-7.  If released, Mr. Burke must not travel outside the Northern District of California; must report to Pretrial Services; must not change his residence without prior approval; and must not leave his parents' home except for employment, mental health treatment, medical and legal visits as permitted by the Court.  These are standard Adam Walsh Act release conditions that dozens of defendants in Mr. Burke's condition have successfully followed over the years. Additionally, Mr. Burke' stepfather and mother believes that living with him and his wife (Mr. Burke' mother) will be a significant moderator in Mr. Burke's life and will assist in ensuring that Mr. Burke stay on track. The two are committed to the cause of guaranteeing his proper course, as they both will explain in person to the court at the motion hearing.

Fourth, Mr. Burke will be undergoing substantial counseling and mental health treatment pursuant to the mandates of the Adam Walsh Act were this Court to uphold the release order. Nowhere in its argument does the government acknowledge this fact – that even assuming Mr. Burke suffers from all the conditions advertised by the government, therapy and counseling have been proven as effective treatment for those conditions. *See. e.g.,* https://psychcentral.com/disorders/treating-pedophilia.  In this vein, Mr. Burke will not merely be released to return to the life he was living; he will have structured therapy and treatment sessions under the arm of U.S. Pretrial Services to begin to address any underlying issues that may have led to the charged offenses.  This treatment will start immediately upon release even before the government's charges are ultimately adjudicated, and further mitigate any risks of danger.

Finally, the Pretrial Services Office, which is the office that would be tasked with supervising Mr. Burke should he be released, determined after it had interviewed Mr. Burke and his sureties/custodians that he would be amenable to supervision under these very restrictive conditions of release.

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ-70635 MAG

Given same, Mr. Burke has more than rebutted the statutory presumption for detention, and the burden remains on the government to prove that no combination of conditions will adequately assure Burke' appearance in court and the safety of the community.

## III. The Government Has Not Met its Burden for Detention

Under the terms of the Bail Reform Act, an accused person shall be released pretrial on the "least restrictive" combination of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). For the accused person instead to be detained pretrial, the government bears the burden of first proving by a "clear preponderance" of the evidence that the person is a "serious" flight risk or by "clear and convincing evidence" that the person poses a danger to the community, and then demonstrating that there is no combination of conditions that will reasonably assure the appearance of the person and the safety of the community. *See id.* § 3142(e)-(f); *see also United States v. Motamedi,* 767 F.2d 1403, 1405-07 (9th Cir. 1985) (Kennedy, J.).[1]

Pretrial release in non-capital cases "should be denied only for the strongest of reasons." *Motamedi,* 767 F.2d at 1407 (citation omitted). Under the Bail Reform Act, the "weight of the evidence" in support of the charge against the defendant "is the least important of the various factors." *Id.* at 1408. Moreover, "[a]lthough the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty." *Id.* (citation omitted). Finally, the Act "does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *Chen,* 820 F. Supp. at 1208.

To meet its burden here, while the statute describes four factors to be considered by the Court, *see* 18 U.S.C. § 3142(g), the government relies almost exclusively on the weight of the evidence

---

[1] Although the burden of proof with regard to risk of flight is not as heavy as the "clear and convincing evidence" standard applicable with regard to danger to the community, it has been emphasized that the "'preponderance of the evidence' standard in pretrial detention matters is more than the usual 'tips the scales slightly' test applied in civil cases." *Chen,* 820 F. Supp. at 1208. "To give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases, applying a 'clear preponderance' test." *Id.* (quoting *Motamedi,* 767 F.2d at 1405-06).

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ–70635 MAG

against Mr. Burke and the serious punishment that he is facing if convicted to try to meet each of those four factors. *See, e.g.,* Gov. Mot. at 13:5-24 (arguing flight risk purely based on the nature of the charges and the strength of the evidence, rather than risk factors specific to Mr. Burke, for which there are none.) As the magistrate judge tacitly found, however, the government cannot meet its burden in this case simply by reciting the nasty facts of the charges, absent more -- because that is not the appropriate standard that applies. The defense concedes that the charges against Mr. Burke are serious and the potential punishments are correspondingly severe -- but also notes for the Court that numerous defendant facing more than five-year mandatory minimum penalties under these circumstances in this District have been released from custody pretrial, follow all the requisite conditions, and surrender for service of sentence.

These cases include actual enticement cases where <u>defendants who have actually gone abroad or remained in the United States and had actual sex with children, some who were registered sex offenders, have been released pending trial</u>. *See, e.g., United States v. Hardeman*, CR-10-859 RS at Dkts, 1, 10, (charged both with 18 U.S.C. § 2423(c)- Engaging in Illicit Sexual Conduct in Foreign Place and 18 U.S.C. § 2260A – Enhanced Penalty for Commission of Sex Crime While Failing to Register (10 year stacked mandatory minimum)(released on $250,000 unsecured bond secured by $50,000); *United States v. Lindsay*, CR-12-873 CRB at Dkts 1, 13 (charged with 18 U.S.C. § 2423(c)- Engaging in Illicit Sexual Conduct in Foreign Place (raped 12 year old girl in the Philippines)(released on bond); *United States v. Badzinski*. CR-21-61 JST at 1, 4 (registered sex offender convicted for molesting niece in his basement charged with soliciting pornography from live eight-year old victim in Chicago); *United States v. Barrett*, CR- 22-152 SI at Dkts. 6, 8 (released on bond despite 5 year mandatory minimum charge of receipt of child pornography and allegations of hands-on touching offense involving minors while acting as a San Francisco private school teacher). As any United States Pretrial Services officer in the District could colloquially relay, defendants in sex offense cases are routinely released by the magistrate judges of this District, most of whom perform extremely well on supervised release and appear out-of-custody for changes of plea and sentencings.

In contrast, the in-district cases cited by the government are not legitimate parallel examples to

the facts of the instant case. For example, in *United States v. Marigny*, CR-20-mj-70755 MAG, the defendant was brought into federal custody on a writ from state custody, where he had been "held without bail on state charges related to this conduct." *See* Dkt 23, Order Granting Government's Motion to Revoke, at 1. It is not clear from the order what weight the district court placed on its finding that "because of Defendant's pending state charges, Defendant would not be released in any event and would be transferred to the custody of the state." *Id.* at 6. Undoubtedly, Judge Freeman had a valid concern in *Marigny* that should the Court order release, the defendant would be subsequently transferred to state custody, detained, and not available for federal prosecution. *Marigny* is accordingly not a valid comparative case.

Similarly, the facts of *United States v. Petersen*, 17-cr-259 CRB, are a far cry from the facts of the instant case. *Id.* at Dkt. 20. In Petersen, Judge Donato revoked the magistrate's release order following an hours-long hearing where the victims of Peterson's real crimes – the parents of children in Tiburon who had been videoed naked by the defendant - pleaded with Judge Donato to keep Petersen in custody. Dkt 38, Order on Motion to Revoke, at 1:22-23, 3:2-3. Indeed, in *Petersen*, Judge Donato was faced with evidence that "Petersen reported that one of the children he was babysitting 'was laying in my lap fondling himself'" and that he had sent photographs of naked children he was babysitting to a co-defendant. *Id.* at 3:13-18. Moreover, unlike Mr. Burke, Petersen "touched in a sexual manner the children entrusted to his care" and "stands out for his proficiency in using encrypted storage devices." *Id*. at 6. Petersen also had a child pornography collection of "between 10,000 and 100,000 images . . .including photos he himself took." All told, the order revoking the release order in *Petersen* focused on the defendant's repeated abuse of the trust of Tiburon parents and children who were entrusted to his care as a babysitter. No such allegations of actual abuse exist in this case.

Finally, in endeavoring to compare the instant case to *United States v. Pullen*, 12-CR-829 CW, the government neglects to inform the Court that Pullen was a registered sex offender at the time he was charged in his federal case, and had previously "sexually fondled a 16-year old and 14 year old volleyball player" that he was actively coaching, then statutorily raped a 14 year old volleyball player while at a volleyball tournament in 1999." Dkt. 14, Gov. Memo for Detention at 2:7-10. Unlike Mr.

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ–70635 MAG

10

Burke, moreover, defendant Pullen had a long history of probation and parole violations. *Id.* at 4. Moreover, unlike Mr. Burke, defendant Pullen faced a mandatory minimum sentence of 15 years; a sentence that ultimately was imposed. *Id.*; *see also* Dkt 42 (Judgment).  In sum, Pullen was a registered sex offender at the time of his federal charge; had violated parole related to that prior, and was a repeat offender at the time he had his federal detention hearing.  This case is not in any way, shape or form a valid comparative case for revoking Magistrate Judge Kim's order here.

As the exemplars described above relay, for every case cited by the government where detention is authorized, there is at least one parallel case where release is authorized.  This case's particular facts and charges, although shocking to read, are at best a neutral factor given this District's pretrial release history on these types of cases. The government accordingly cannot rest on the facts of the charges alone when similarly situated persons to Mr. Burke have, in the past, been released.

Indeed, when the Court peels back the layers of the government's argument, which undoubtedly are designed to shock the Court by being as graphic as possible, there is absolutely nothing specific to Mr. Burke, or his release plan that merits ongoing detention in this matter. Grasping at straws, the government opines that Mr. Burke presents a danger to children as a bus driver, naming (without citation) a now nine-year old report about Mendocino County ridership from 2015 that sets the alleged percentage of youth riders at 15%.  Gov. Mot. at 12.  Because this report was completely generic and unclear, it was impossible for the undersigned to determine whether this alleged 15% figure includes minors riding in the custody of a parent or guardian, which would make the most sense given that alleged statistic.  The government does not adequately explain why this figure or report supports its argument that Mr. Burke presents an individualized danger to the community given his line of work.  For example, who cares that there was a partnership between the MTA and the Boys and Girls Club in November 2011 if the defendant does not drive that particular route?  Is it clear that this route even still exists post-COVID?  If so, the Court can simply order that Mr. Burke not accept any such route that would largely be comprised of schoolchildren.

Moreover, a bus driver does not have meaningful, active contact with children.  A bus driver smiles at people getting on a bus, makes sure that the dollar bills go in the meter, then resumes

driving the bus route. The government offers no explanation how Mr. Burke could possible molest a child while actively driving a bus, nor presents any realistic scenario where he would somehow lure a child away from a parent or guardian during his shift to potentially molest them….on a public sidewalk during a coffee break? This "argument," even if properly supported with the actual report named, is too specious and speculative to allow the Court to conclude that Mr. Burke would be a danger to children through his employment as a standard-route bus driver from 8-5 p.m.

In summary, there has been absolutely zero showing that Mr. Burke is an individualized risk of flight such that the conditions recommended by Pretrial Services would be inadequate to assure his appearance. Mr. Burke's family is here, the only life he knows is here and he will be on electronic monitoring with a closely-knit custodian and surety looking over him. And as for the government's burden to establish dangerousness to the community by clear and convincing evidence, the government against falls short when looking at anything other than its allegations behind the charges. By doing little than affix Mr. Burke's alleged offensive messages on repeat, the government is attempting to circumvent the clear dictates of the Bail Reform Act by relying almost exclusively on the charges and evidence against Mr. Burke and the serious punishment he would face if convicted. Indeed, when the government goes so far as to suggest that a defendant's custodian (his mother) would somehow be in danger as a victim of incest "if he got a chance" because of some purported writing the defendant made when he was 13 years old (see Audio of Hearing at 1:40-2:40, especially 2:44), the Court knows that the government has sailed too far off the rails to prove the point because there is nothing valid against Mr. Burke to argue outside the charges. Magistrate Judge Kim acknowledged exactly that at the end of the hearing when the Court indicated that it "did not think that was a very credible [argument]." *Id*. at 4:47. This Court should similarly conclude as Magistrate Judge Kim did and uphold the release order.

//
//
//
//

DEFENDANT'S OPPOSITION
*BURKE*, CR 24–MJ-70635 MAG

# CONCLUSION

As Mr. Burke has rebutted the statutory presumption of detention, and the government has not met its burden of demonstrating that no combination of release conditions would reasonably assure his appearance and the safety of the community, for the aforementioned reasons, the Court should deny the government's motion to revoke Judge Kim's release order.  This is not a capital case, and the alleged conduct, while certainly vile, does not override the other important factors that mitigate against detention.

Dated:   May 2, 2024				Respectfully submitted,

						JODI LINKER
						Federal Public Defender
						Northern District of California

						           /S
						ELIZABETH FALK
						Assistant Federal Public Defender